# HILLSBOROUGH,

## DECEMBER TERM, A. D. 1851.

## FORD *v.* FORD.

An ademption of a legacy is where the thing specifically bequeathed ceases to exist during the lifetime of the testator.

*Semble,* that in determining whether there has been an ademption of a legacy courts will not consider the intention of the testator farther than it appears from the words of the will.

A testator bequeathed " all notes of hand which are payable to me at the date of this codicil." *Held,* that the legacy was specific.

A testator, having made a specific bequest of all notes of hand which were then payable to him, and then holding four notes signed by two persons, afterwards, before his death, released one of the signers, and took new notes for the debt, from the other signer, secured by a mortgage. *Held,* that there was no ademption of the legacy.

TROVER. The case was submitted to the court for decision upon the following statement of facts.

The action is brought by Mehitable Ford, against Timothy S. Ford, to recover four promissory notes signed by one Samuel S. Hill, and payable to Timothy Ford the father of the defendant, or his order, all which notes were dated at Hudson, in this county, February 24th, 1849. One of the notes is for the sum of $365.33, payable on demand with annual interest ; one for the sum of $1000, payable in one year from its date, with annual interest ; and one for the sum of $1000, payable in two years from its date, with annual interest; and one for the sum of $1000, payable in three years from its date, with annual interest. The writ was dated March 29th, 1851.

On the twentieth day of February, A. D. 1841, Timothy

Ford made and executed his last will and testament, and after making other devises and bequests, made the following legacies :

" Third.   My will is, that after paying all debts I may owe at the time of my decease, and I do give, will, and devise and bequeath the rest, remainder and residue of my property and estate, both real and personal, shall go, descend, and be distributed between my said two sons, and my daughter Mehitable Varnum, wife of Jeremiah Varnum, of Dracut, in the State of Massachusetts, in the same way and manner as if this will had not been made, and said rest, residue, or remainder were all my property and estate, and in case of the decease of either of my said sons or daughter before I shall die, then his or her portion of said residue to go to his or her heirs and representatives by the right of representation."

He then constituted and appointed the defendant executor thereof.

On the fifth day of January, A. D. 1849, by a codicil to the will, duly made and executed, he made the following legacy :

" I do hereby give and bequeath to my wife, Mehitable Ford, all notes of hand which are payable to me at the date of this codicil, all of the neat stock and sheep and horses, and all of the carriages, and all of the lumber which is now on hand."

On the fifth day of December, A. D. 1849, the will and codicil were duly proved, approved and allowed as the last will and codicil of the said Timothy Ford, in the court of probate for the county of Hillsborough, and the defendant undertook the execution thereof.

It is agreed that at the date of the codicil there were existing four promissory notes, signed by Samuel S. Hill and his brother, payable to the testator, and on the twenty-fourth day of February, A. D. 1849, during the life-time of the testator, the notes were taken up, and the brother of Hill was released at his own request, and the notes described in the plaintiff's declaration were given and secured by mortgage.   The notes taken up and the notes described in the plaintiff's declaration, were given for one and the same debt.   Prior to the commencement of this action, the plaintiff made a demand on the defendant for the notes, and the

defendant refused to give them up. It is further agreed that the defendant had at the time of the demand, and still has the notes in his hands and possession, and the estate of the testator is solvent, and the proceeds of the notes are in no way needed to pay the debts due from the estate, or the expenses of administration.

It is agreed that if, in the opinion of the court, the notes described in the plaintiff's declaration are the property of the plaintiff, then judgment shall be rendered for the plaintiff for the amount of the notes, otherwise judgment shall be rendered for the defendant.

*E. P. Parker*, for the plaintiff.

*Atherton & Sawyer*, for the defendant.

GILCHRIST, C. J. The questions in this case arise upon the following bequest in the codicil : " I do hereby give and bequeath to my wife, Mehitable Ford, all notes of hand which are payable to me at the date of this codicil." At that time the testator held four notes, signed by Hill and his brother, but afterwards they were given up, the brother of Hill was released, and the present notes were given for the same debt.

It is necessary to ascertain whether this legacy be specific, in order to determine in whom the ownership of the notes resides. Did the testator intend that the legatee should have the very thing bequeathed\? *Wallace* v. *Wallace, ante,* 149. We think that he did, and that the authorities are decidedly in favor of this position.

In *Sleech* v. *Thoungton,* 3 Ves., Sr., 562, a bequest of " my East India bonds " was held to be specific. So also was a bequest of " my note of £500." *Drinkwater* v. *Falconer,* 2 Ves., 623 ; of " my navy bills." *Pitt* v. *Camelford,* 3 Bro. C. C., 160 ; of the money due on an interest note given by A.," *Fryer* v. *Morris,* 9 Ves., 360 ; or " due on A's bond," *Davies* v. *Morgan,* 1 Beav., 405 ; " the interest of £7000 secured on mortgage of an estate belonging to A," *Gardner* v. *Hatton,* 6

Sim., 93. So in *Basan* v. *Brandon*, 8 Sim., 34, where a tes-tator, resident in Jamaica, bequeathed £2000, part of a sum of £7000 in the hands of his agents in England, and received by them from the the transport board, on his account, the legacy was held to be specific. So a bequest is specific of " all the stock which I have in the three per cents," *Humphreys* v. *Humphreys*, 2 Cox, 184. In *Walton* v. *Walton*, 7 Johns. Ch., 258, the bequest was of " all my right, interest and property in the thirty shares which I own in the bank of the United States," and it was said by Chancellor Kent, (page 262,) that the testator " evidently meant to give those identical shares, whether they were worth more or less, and not the value of them in money," and that the reasoning of the cases on this subject is that if the legacy is meant to consist of the security, it is specif-ic. *Ibid*, 264. In *Barton* v. *Cook*, 5 Ves., 461, a legacy of " £3000 stock in the three per cent. consols bank annuities, be-ing part of my stock now standing in my name in the company's books," was held specific. In *Chaworth* v. *Beech*, 4 Ves., 556, a legacy of the money due on a note, was held to be specific, and to be " nothing but a gift of the note." *A fortiori*, a legacy of the note would be specific. In *Ashburner* v. *Macguire*, 3 Bro. C. C., 108, which is a leading case upon this subject, a legacy of the principal and interest of a bond was held to be specific, as was also a legacy of " my capital stock of £1000 in the East India company's stock." The use of the word " my " was some-what relied on in this case, as showing an intent to make a spe-cific bequest, as it was also in several of the cases herein cited. The words of this will, " the notes of hand which are payable to me," are certainly, we think equivalent to the use of the word " my," in the cases where it is used.

The other question in the case, is whether there has been an ademption of the legacy. Upon this point the decisions are nu-merous. An ademption, is where the thing specifically bequeath-ed is not in existence at the time of the testator's decease. The legacy is then, to use the common expression, *adeemed*. If a horse, for instance be specifically bequeathed, and then die du-ring the testator's lifetime, or be disposed of by him, the legacy

will be lost or adeemed, because there will be nothing on which the bequest can operate. //

In the case of *Backwell* v. *Child*, Amb., 260, a partner under articles providing for the renewal of the partnership, specifically bequeathed his share of the profits, naming the amount, and upon the expiration of the old articles, new articles were entered into, by which his share in the profits was altered. Lord *Hardwicke* said that "where a person in trade makes a provision out of his share for his family, and afterwards renews the partnership, by which perhaps his interest is varied, yet it is not a revocation; if it were, it would introduce great confusion."

In the case of *Ashburner* v. *Macguire*, before cited, Lord *Thurlow* held that the question of ademption was one of fact and not of intention. And this point he stated still more strongly in *Stanley* v. *Potter*, 2 Cox, 182, where he said "the idea of proceeding on the *animus adimendi* has introduced a degree of confusion in the cases, which is inexplicable, and I can make out no precise rule from them on that ground. It will be a safer and clearer way to adhere to the plain rule which I before mentioned, which is to enquire whether the specific thing given remains or not." The language of the Lord Chancellor in *Drinkwater* v. *Falcon*, 2 Ves., 23, and also in *Coleman* v. *Coleman*, 2 Ves., Jr., 693, clearly authorize the consideration of the intent of the testator upon this point. *Roberts* v. *Pocock*, 4 Ves., 150. But it is now established in England that the only question is whether the specific thing remains at the death of the testator, and that the intention to adeem will not be considered beyond the expressions in the will. *Barker* v. *Rayner*, 5 Madd., 208 ; *Fryer* v. *Morris*, 9 Ves., 360 ; *Le Grice* v. *Finch*, 3 Mer., 51 ; 2 Russ., 22, where the decree of the vice chancellor was affirmed by Lord *Eldon* on appeal.

But in *White* v. *Winchester*, 1 Pick., 48, it seems to have been considered that the presumption in favor of ademption might be rebutted by evidence of a contrary intention. The weight of American authority, however, is in favor of the English rule ; and of the cases in this country upon the point, there is a very clear analysis in the notes of the American editors to White's

" Leading Cases in Equity." Indeed, the rule that if the thing devised ceases to exist, the legacy will be adeemed, must be abrogated, if evidence of the testator's intention, either by his declarations, or by circumstances, or by a consideration of the peculiar condition of his property, can be considered by the court. Where shall the line be drawn? If he possess herds of cattle when he makes his will, and bequeath them specifically, and then dispose of them, and in the course of his business transform the proceeds of them into the shape of manufactories or ships, would it be safe to admit evidence that, although he had not altered his will, he still intended that under the bequest of his cattle, the legatee should take his ships and manufactories? And yet such might be the result, if we relied on evidence of the testator's intention. We think the rule, as stated by Lord *Thurlow*, is recommended by its safety, and its avoidance of the numberless difficulties in which a contrary doctrine would involve us.

. In the case of *Ashburner* v. *Macguire*, the testator bequeathed to his sister for life, the interest of a bond due him, and he gave the principal, on her death, to her children. The debtor became a bankrupt, and the testator proved the debt under the commission, received a dividend upon it, and died. Lord *Thurlow* decreed against the administrator and residuary legatees, that the bond should be delivered to the sister and her children, that they might receive the future dividends out of the bankrupt's estate. The legacy was considered adeemed only so far as the dividend had been received by the testator. In *Walton* v. *Walton*, 7 Johns. Ch. 258, the testator bequeathed " all my right, interest and property, in thirty shares which I own in the bank of the United States." The charter of the bank expired, and all its property and funds were conveyed to trustees, who divided the funds received by them, from time to time, among the stockholders, and the testator received the dividends on the shares devised, but did not sell nor dispose of the shares. It was held that this was an ademption *pro tanto* only. Chancellor *Kent* said, that " the legacy of the shares was not wholly adeemed, or the legacy destroyed or extinguished by the variation of the testator's interest in those shares, owing to the dissolution of the char-

ter.　The fund was varied, and differently arranged and diminished in value by operation of law, but not destroyed, nor its identity lost." Another case where the identity of the fund was held not to be lost, is that of *Sheffield* v. *The Earl of Coventry*, 2 Russ. & Myl., 317.　The testator gave his son a legacy of " £20.000 in the joint stock of the annuities, transferable at the bank of England, commonly called four per cent. bank annuities." The only four per cent. bank annuities existing at the date of the will were reduced, by act of parliament, to three and a half per cents ; afterwards and before the testator's death, a new stock of four per cent. bank annuities was created.　It was held that the testator's intention could not be confined to the four per cent. bank annuities existing at the date of the will, that the will spoke at the testator's death, and that the son was entitled to £20.000, in the then existing bank annuities.

In the present case, the notes existing at the date of the codicil were afterwards taken up, the surety was released, and the present notes were given and secured by mortgage.　These facts are all that exist relating to the question of ademption.

It is well settled that if a debt specifically bequeathed, be received by the testator, it will be adeemed ; for then there will exist nothing for the will to operate upon.　*Badrick* v. *Stevens*, 3 Bro. C. C., 331 ; *Fryer* v. *Morris*, 9 Ves., 360 ; *Barker* v. *Rayner*, 5 Madd., 208.　In the case of *Gardner* v. *Hatton*, 6 Sim., 93, the testator bequeathed £7000 secured on mortgage of an estate at W., belonging to R. I.　The £7000 and interest were received by the testator after the date of the will, by the testator's agent, on his account, and immediately afterwards £6000, part of it, were invested on another mortgage, and the remainder was paid into a bank in which the testator had no other monies, but was afterwards drawn out by a person to whom the testator had given a check for the amount.　It was held that the legacy was specific, and notwithstanding the £6000 remained due on the second mortgage, at the testator's death, that the legacy was wholly adeemed.　" My opinion " said the vice chancellor, " is, that when the testator received the whole of the debt,

there was an end of the subject, and consequently, that this is a clear case of ademption."

In that case the identity of the case was lost. But where it is not lost, where it still preserves its form substantially, as at the date of the will, where there has been no payment of it, but only a change of the security for it, there seems to be no reason for considering it adeemed. There are several cases where a mere change of form has been held not to change the identity of the debt. In *Davis* v. *Maynard*, 9 Mass., 242, a note secured by mortgage was given up and a recognizance accepted for the sum due, and this was held not to discharge the mortgage. In *Pomroy* v. *Rice*, 16 Pick., 22, a *feme sole* held a note secured by a mortgage. After her marriage, her husband gave up the note and took a new one, and this was held not to discharge the mortgage. To the same effect is the case of *Watkins* v. *Hill*, 8 Pick., 522. In *Dunham* v. *Day*, 15 Johns. Rep., 554, it was decided that where a mortgage is given as security for the payment of promissory notes, which are from time to time renewed, the renewal is not to be deemed an extinguishment of the original debt so as to affect the continuance of the security. This court has adopted the same principle. *Elliott* v. *Sleeper*, 2 N. H. Rep., 525. In the case of *The N. H. Bank* v. *Willard*, 10 N. H. Rep., 210, a joint and several note was given secured by a mortgage. The note was surrendered, and two notes given signed by the debtors severally. Mr. Ch. J. *Parker* says, in pronouncing the judgment of the court, the debt "has certainly not been paid. If the taking of the separate securities may operate as a discharge of the former note, so that no action could be maintained on that, the debt itself has not been extinguished. No money has been paid nor any release given. Nothing has been accepted in satisfaction of the debt. It is a mere change of the security, and of the evidence of the debt, from a joint and several note to two several ones, so that the debtors no longer stand as sureties to each other for the proportion of each." We have held also, that a negotiable promissory note is not a payment of a preëxisting debt, unless there be an express agreement to receive it in payment *Jaffrey* v. *Cornish*, 10 N. H.

Rep., 505; or unless an agreement can be inferred from the circumstances. *Johnson* v. *Cleaves*, 15 N. H. Rep., 332.

In the present case, the debt existing at the date of the codicil has not been paid by the substitution of the new notes and the mortgage, for the original notes. Its identity has not been lost, and nothing has been accepted in satisfaction of it. There was merely a change of the security and of the evidence of the debt, from joint and several notes to notes secured by mortgage.

We are, therefore, of opinion, that there has been no ademption of the legacy, and that under the will of the testator, the notes belong to Mehitable Ford.

*Judgment for the plaintiff.*