### Elizabeth Wyckoff

*v.*

### The executors of Matthias M. Perrine, deceased

1. To make a legacy specific, it must appear, either by express words or otherwise by inference, resting upon a strong, solid and rational interpretation of the will, that the testator intended the legatee to take the particular thing given and nothing else.

2. If a debt is the subject of a specific legacy, payment of the debt will destroy the legacy, whether it be made voluntarily or by compulsion.

On demurrer to bill.

*Mr. Barker Gummere,* for demurrants.

*Mr. Alan H. Strong,* for complainant.

VAN FLEET, V. C.

This is a suit for a legacy. The defendants have demurred to the complainant's bill, denying that on the case made by it she is entitled to relief. The complainant is a daughter of Matthias M. Perrine, who died testate in the month of October,

1878. She grounds her right of action on the following clause of her father's will:

"Whereas, my son-in-law, David B. Wyckoff, borrowed of me the sum of twenty-three hundred dollars, which sum I loaned him on interest; now, it is my will, in order to do equal justice to and between my children, that the same shall be considered and taken as so much of the share of his wife, Elizabeth, of my estate; and I give and bequeath to my said daughter Elizabeth the further sum of five hundred dollars, which is to be in full of her share of my estate; and I make no further provisions for the said Elizabeth Wyckoff in this my last will and testament."

The $500 have been paid. The debt of David B. Wyckoff to the testator was evidenced by a promissory note, dated April 1st, 1874, and payable one year after date. A petition in bankruptcy was filed against Wyckoff on the 3d day of May, 1876, on which he was subsequently, in the language of the bill, in due course of law adjudged a bankrupt. He was discharged on the 2d of April, 1878. The testator proved his debt and received two dividends out of the bankrupt assets—the first, June 15th, 1877, of $384.50, and the second, March 14th, 1878, of $123.-62, making a total of $508.12. The will bears date May 28th, 1877. It was executed, it will be observed, more than a year after the commencement of the proceedings in bankruptcy, and less than three weeks before the testator received the first dividend.

The complainant contends that the legacy given by the clause under consideration is not specific but demonstrative, in other words, properly construed the clause means this, that she is, under any circumstances, to have a legacy of $2,300, the reference to the debt of her husband being intended simply to indicate the fund which should be applied primarily to its payment. Such a construction would, I think, not only do violence to the language used by the testator, but would attribute to him a purpose certainly not expressed, and probably never entertained. No gift is made by express words, but an intention to give is very clearly expressed by words of direction or command. There can be no doubt that the thing which was before the testator's mind, when he made his will, as the subject of the gift to the complain-

ant, was a debt. He tells who the debtor was—his son-in-law, David Wyckoff; how he incurred the debt—for borrowed money; the amount of the debt—$2,300 · the terms on which it was held—loaned on interest; and then he says:

"Now, it is my will, in order to do equal justice to and between my children, *that the same*—that is, the debt due to me from my son-in-law—shall be considered and taken as so much of the share of his wife, Elizabeth, of my estate."

In construing a will the court must always have regard to the circumstances, situation and surroundings of the testator. At the time this will was made the son-in-law had been adjudged a bankrupt; the testator knew it, he knew also that the greater part of his debt was hopelessly lost, and for that reason, unquestionably, he thought it was his duty, in order that justice might be done to all his children, to treat the debt of his son-in-law as an advancement to his daughter, and to effect that purpose he gave her the debt. He intended to say by the provision under consideration, as I think he has quite clearly said:

"I want each of my children to have an equal share of my estate; the husband of my daughter Elizabeth borrowed of me, some time ago, $2,300, which he cannot repay; in order to be just to my other children, I give Elizabeth the debt I hold against her husband, as part of her share, and the further sum of $500, but she is to have nothing more."

In deciding whether a legacy is specific or general, the intention of the testator must control, as it must the decision of every other question involving the construction of wills. There is no technical arbitrary rule requiring the use of particular words or expressions to make a bequest specific. Such intention may be manifested either by clear words or by the general scope and texture of the instrument, but in the latter case, in the language of Lord Eldon, the inference should rest upon a strong, solid and rational interpretation of the will. The rule of construction to be observed in such cases is thus stated by Roper: "A court of equity leans to the consideration that all bequests are general; it therefore requires expressions actually bequeath-

ing the identical debt, or such reference to it, appearing upon a strong, solid and rational interpretation of the will, as to raise a plain inference that the debt was the exclusive subject intended to be given by the testator to the legatee." *1 Roper on Leg. 234.* In *Norris* v. *Thomson, 1 C. E. Gr. 218,* Chancellor Green held that in order to make a legacy specific there must be something on the face of the will to individuate the thing given, or some form of expression must be used which clearly indicates a purpose on the part of the testator to give a specific thing and nothing else. Here, just such a condition of affairs exists. The testator has marked out, with great clearness and precision, just what the complainant is to take—she is to have the debt of her husband and $500; and then he declares she is to have nothing more. That such was his intention, seems to me to be so obvious as to leave the complainant without any substantial ground upon which to rest the opposite contention. The words of exclusion must, I think, be regarded as furnishing an almost infallible test of the meaning of the testator.

The case involves another question. Has the legacy been adeemed ? It is certain the debt which was the subject of the legacy, did not exist at the time of the testator's death. So much of it as had not been paid to the testator, out of the bankrupt's assets, was extinguished by his discharge in bankruptcy, so that the subject of the gift did not exist at the testator's death. Some of the earlier decisions made a distinction between the effect of a voluntary payment and a compulsory payment of a debt, which was the subject of a specific legacy, in adeeming the legacy. They held that, where the debtor came forward of his own volition and without solicitation, and paid the debt, in the testator's lifetime, the testator's acceptance of the money, under such circumstances, did not indicate an intention to take back the legacy ; but if he, of his own will, and in the absence of any other apparent reason than that he wanted the debt paid, constrained the debtor to pay, then his act was regarded as evincing an intention to adeem the legacy.. This distinction was recognized by the supreme court in *Stout* v. *Hart, 2 Hal. 414, 424.* It was there said : "A voluntary payment is not an ademption, because accepting

the money when tendered does not imply any alteration in the intentions of the testator; but when the testator compels payment, this fact may or may not amount to an ademption, according to circumstances." The cases adopting this distinction as the rule of judgment, will be found collected in *2 Lead. Cas. in Eq. (4th Am. ed.) 624.* The distinction, however, no longer prevails. The modern decisions, both of this country and England, with almost perfect unanimity, repudiate it as unsound and fallacious. The rule now generally recognized as an accurate statement of the law on this subject, is that laid down by Lord Thurlow in *Humphreys* v. *Humphreys, 2 Cox Ch. 185.* He said : " The only rule to be adhered to is to see whether the subject of the specific bequest remained in specie at the time of the testator's death, for if it did not, then there must be an end of the bequest; and the idea of discussing what were the particular motives and intention of the testator in destroying the subject of the bequest, would be productive of endless uncertainty and confusion." Chief-Justice Black states the same rule, as follows:    " If a thing bequeathed in a will, by such description as to distinguish it from all other things, be disposed of, so that it does not remain at the testator's death, or if it be so changed that it cannot be called the same thing, the bequest is gone.    If such a legacy be of a debt, payment necessarily makes an end of it.    The legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him, but if not, he cannot have money in the place of it.    This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator." *Hoke* v. *Herman, 21 Pa. St. 301, 305.* The cases repudiating the distinction alluded to are too numerous to be cited.    They will be found referred to in *2 Wms. on Exrs. (6th Am. ed.) 1323; 2 Lead. Cas. in Eq. (4th Am. ed.) 623, 668; Theo. on Wills 121; Redf. on Wills. 423.*    The question now is one of identity and not of intention, as gathered from matters extrinsic the will.    In such cases, the test is, did the subject of the gift exist in specie at the testator's death; if it did, the lega-

tee is entitled to it against all persons except creditors; if it did not, he is not.

Trying the complainant's right to relief by this principle, it is clear that judgment must be awarded against her. The demurrer must be sustained, with costs.