## NATALIE JENNESS ELWYN *vs.* B. SPALDING DE GARMENDIA, Executor.

*Wills—Gift of Unidentified Chattel—Allotment by Executor—
Ademption of Legacy—Change of Form—Ten-
ancy in Common—Creation.*

One may in her will provide for an allotment by her executor to a legatee named of one of two or more similar articles included in her estate, as when she bequeathes to a person "one string of my pearls," she having two strings.          p. 111

A specific legacy, that is, a legacy of something distinguished from the rest of the testator's estate, is adeemed or nullified if the thing does not continue in existence, so distinguished from the rest of the testator's estate, at the time of his decease, an ademption thus resulting not only from complete loss or destruction of the subject of the gift, but also from changes which involve a loss of its identity as specified.          p. 111

Ademption is to be sought for in the facts as to destruction or loss of the thing specified in the legacy, or loss of its identity as specified, rather than in change of intention on the testator's part.          p. 112

The mere designation of the form or locality of a thing is not always decisive of the question of the loss of identity of a thing bequeathed, for the purpose of ademption, the question being one of the testator's intention in the designation or description of the article given.          pp. 113, 114

In the case of legacies of "one string of my pearls" to one person and of "the second string of my pearls" to another, *held* that neither was adeemed by the subsequent restringing of all the pearls on one string, it not being presumably the intention of testatrix that the pearls should go to the legatees named in the separate strings or not at all.          p. 114

Where two strings of pearls, bequeathed to two distinct persons, were subsequently combined by testatrix in one string, the two legatees named became owners in common of the entire

collection of pearls, as being owners of property indistinguish-
ably commingled by a cause beyond the control of either owner.

p. 115

*Decided April 9th, 1925.*

Appeal from the Orphans' Court of Baltimore City.

Petition by Natalie Jenness Elwyn for distribution of an
alleged legacy in her favor under the will of Mary J. De
Garmendia, deceased, opposed by B. Spalding De Garmen-
dia, executor of said will. From an order dismissing the
petition, petitioner appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, UR-
NER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*W. Ainsworth Parker,* for the appellant.

*J. Britain Winter,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The case is that in 1913 the testatrix made a will which
contained a legacy to the petitioner of "one string of my
pearls," and a legacy to a Mrs. Rojestvensky of "the second
string of my pearls," and at the time of her death in 1923
she had all her pearls combined in one string or collar. And
in a form of will prepared by the testatrix in the year 1922,
but never executed (see *In re de Garmendia Estate,* 146
Md. 47), she omitted the legacies of pearls to Mrs. Elwyn
and Mrs. Rojestvensky, and to the form of bequest to her
sister, Mrs. Von Walbrunn, as it appeared in the will of
1913, she added the words "including my pearls." The
question to be decided, then, is whether the legacy of one of
two strings to the petitioner has been lost by ademption.
The executor, in making up his administration account,
assumed that the legacy had been adeemed, and stated that
the collar made up of all the 164 pearls would be distrib-
uted to Caroline Von Walbrunn. The petitioner prayed

the orphans' court that this distribution might be changed, and the string of pearls be distributed to her; and the petition was answered by the executor and, after testimony had been taken, dismissed. The petitioner appeals from the order of dismissal.

At the time of making the will of 1913 the testatrix had a double necklace of pearls, with the two strings united by a jewelled clasp. One string was shorter than the other, so as to lie inside, and both strings were made up in the usual method, with the pearls graduated in size toward the largest in the center. The pearls are now in Paris, where the testatrix last resided. Beyond the facts just stated, there is no description in the record, and apparently no knowledge here, of the number, characteristics or qualities of the pearls; and no estimate of the value, or proportion of value, in each string, is given. It is to be observed that by the provisions of the will neither of the legatees is given one string rather than another. Each is to have one or the other, indifferently. The legacy is a specific one, in that it refers to the pearls which the testatrix owned, and the executor is charged with the duty of dividing the necklace, and allotting the two strings. It was permissible for the testatrix to provide for such an allotment by the executor; such provisions have, indeed, been long familiar, as when a testator bequeathes one of his horses, not naming which, to a designated legatee, and the like. *Ward on Legacies,* 17.

A specific legacy, that is, a legacy of something distinguished from the rest of the testator's estate, is adeemed or nullified if the thing given does not continue in existence, so distinguished from the rest of the testator's estate at the time of his decease. *Kunkel v. Macgill,* 56 Md. 120, 122 to 124; *Brady v. Brady,* 78 Md. 461, 473; *Gardner v. Mc-Neal,* 117 Md. 27, 36; *Dugan v. Hollins,* 11 Md. 41; *Stephenson v. Dawson,* 3 Beav. 342, 349. And the ademption might, of course, result not only from complete loss or destruction of the subject of the gift, but also from changes which involve a loss of its identity as specified.

Ademption, we think, is to be sought for in the facts as to destruction or loss of the thing specified in the legacy, or loss of its identity as specified, rather than in change of intention on the testator's part. Lord Thurlow, who decided the leading case of *Ashburner v. McGuire,* 2 Bro. Ch. C. 110, after two years of study and reflection (*Chaworth v. Beech,* 4 Ves. Jr. 555, 556), concluded that the only rule to be adhered to was to see whether the subject of the specific bequest remained *in specie* at the time of the testator's death, for if it did not, then there must be an end of the bequest; and that the idea of discussing what were the particular motives and intention of the testator in each case, in destroying the subject of the bequest, would be productive of endless uncertainty and confusion. *Ashburner v. McGuire, supra,* note, page 94; *Stanley v. Potter,* 2 Cox C. C. 180, 182; *Humphreys v. Humphreys,* 4 Ves. Jr. 184. That conclusion did not gain entire acceptance, and many decisions have since treated of ademption as a change of mind. But those very decisions make it evident that, if a question of ademption is approached from that side, the uncertainty and confusion which Lord Thurlow predicted is likely to result, and the courts may be embarrassed with problems of proof of the new intention, possibly of the admission of subsequent parol declarations of the testator (*Cf. Grogan v. Ashe,* 156 N. C. 286), and infringements upon the rule restricting the courts to formally executed wills for the ascertainment of the intentions of a decedent with respect to the disposal of his property. *Cf. Chase v. Stockett,* 72 Md. 235, 248. The modern text-writers seem to avoid the view that ademption is to be sought for in change of mind. 3 *Woerner, American Law of Administration,* 1523; 2 *Williams, Executors* (6th ed.), 1183; 2 *Alexander on Wills,* 1055. In the case of *Re Brann,* 219 N. Y. 263, Justice Cardozo says: "What the courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change." And in *Re Slater,* L. R. (1907), 1 Ch. 665, 671, Cozens-Hardy, M. R., said: "There was a time

when the courts held that ademption was dependent on the testator's intention, on a presumed intention on his part; and it was therefore held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years that has ceased to be the law."

This brings the inquiry down to the effect of the reference in the legacies to the two strings into which the pearls were then divided. Does it render the continued existence of those particular strings essential to the gifts, or may the gifts be regarded as independent of that division? The mere designation of the form or locality of a thing given is not always decisive In *Joynes v. Hamilton*, 98 Md. 665, 683, this Court held that in a legacy of a ground rent redeemable at any time upon payment of $2,000, the testator must have had in mind the possibility of redemption and substitution of the money, and to have intended that the money should pass under the legacy. "When," says 1 *Roper, Legacies*, 344, "from the nature of the place in which the goods are specified to be, it is considered that the locality of them was not referred to as essential to the bequest, but merely as descriptive of. the articles meant to be given, and substituted in lieu of a schedule particularizing them," no ademption should result from a moving of them 3 *Woerner, American Law of Administration*, 1525; 2 *Redfield on Wills*, 435; *Chase v. Moore*, 73 N. H. 533. An illustration frequently cited is that in *Ward v. Turner*, 2 Ves. Sen. 431, which drew a distinction between a bequest of goods designated as in a particular house and of goods designated as in a ship, on the ground that the latter must be supposed to have been made with a view to the several accidents and contingencies to which they were liable. So Roper cites illustrations of gifts of the testator's furniture in a designated house, which, being all the furniture the testator owned, was thought to have been intended to pass even if moved from that house. 1 *Roper on Legacies*, 344, 345; *Land v. Devaynes*, 4 Bro. C. C. 537. In *Walton v. Walton*,

7 Johns. Ch. 258, dividends to shareholders on liquidation of the Bank of the United States were held to pass under a legacy of shares in the bank. And in *Pope v. Hinckley,* 209 Mass. 323, stock given in exchange on reorganization of a corporation was held to pass under a similar legacy. *Oakes v. Oakes,* 9 Hare, 666; *Spencer v. Spencer,* 21 Beav. 548; *Cf. Ludlam's Estate,* 13 Pa. St. 188, and *Re Slater* (1907), 1 Ch. 665.

The question, then, is one of the testator's intention in the designation or description of the articles given. Are we to suppose the testatrix in the will in this case to have intended that her pearls were to go to Mrs. Elwin and Mrs. Rojestvensky in these two strings or not at all, so that if the strings were broken, even by accident, and the pearls commingled, the legacies were to fail. Or if she had deliberately commingled the pearls for some temporary purpose, so that precisely the same grouping as that in the two strings could not be restored, should we say that by this commingling the exact subjects of the gifts, as they were intended, had lost their identity, or existence, *in specie?* As has been observed, the testatrix did not give either legatee a particular string of pearls, but only one or the other indifferently. She was disposed to treat the legatees equally as objects of her friendship and bounty, although by taking the pearls as they were then strung she could give only equal chances in an unequal division. We think it would be more nearly in accordance with her intention to regard the existing division as one adopted merely because of its convenience; and that we should be giving undue weight to that element in the designation of the subjects of the legacies, and should defeat the testatrix's purpose, if we should hold that the restringing of all the pearls into one necklace worked an ademption. We, therefore, disagree with the view taken by the orphans' court, and hold that the petioner's legacy in the will of 1913 is still valid and effective despite the commingling of the pearls in the one string.

The effect of this decision is that the executor has in his

possession one collection of pearls bequeathed to two lega-
tees, and the legal situation of the legatees is precisely that
of any other two owners of property indistinguishably com-
mingled by a cause beyond the control of either owner; the
two are owners in common.    See authorities collected in
Brantly's note to *Crapster v. Griffith*, 2 Bland, 5; *Annot.
Cases*, 1913E, 673, and 1918A, 746; 10 *A. L. R.*, 766;
*International Lumber Co. v. Bradley Timber Co.*, 132 Minn.
155; *Ayre v. Hixson*, 53 Oreg. 19; *Hobbs v. Monarch Re-
frig. Co.*, 277 Ill. 325.    And so much of the estate in the
executor's hands will be distributed according to the ordi-
nary practice in distributing a collection of articles be-
queathed to more than one legatee.

> *Order reversed, with costs to the appellant.*