In the Matter of the Estate of

**ELLEN CORNEIRO TANGGAARD,**
**Deceased**

Probate No. 17-1945

District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

April 29, 1946

**MOORE,** *Judge*

This matter came on for hearing upon a contest between two legatees under the will of Ellen Corneiro Tanggaard, deceased, over title to certain furniture and jewelry left by the testator. The facts of the case are: That on October 18, 1943, deceased executed the will herein, the pertinent parts of which are as follows: "I give, bequeath and devise unto my niece, Erla Corneiro, the properties Nos. 24 and 25 Hospital Ground, St. Thomas, together with the buildings and appurtenances, and the household furniture, and everything else located thereon and therein; all to be held by her in fee simple forever." Then, after certain other specific bequests, the residuary clause provides as follows: "I give, bequeath and devise unto my nephew, Virgilio Sainz, all the rest, remainder and residue of my estate, wherever located and of whatever comprised; hereby declaring the aforesaid Virgilio Sainz to be my residuary legatee and devisee."

At the time of the execution of the aforesaid will, the testator was residing in the house Nos. 24 & 25 Hospital Ground, which contained all of her personal household

furniture and jewelry. Eleven months after the execution of this will, the testator moved to Puerto Rico to live and took with her from the said house the bulk of the furniture and jewelry contained therein. Some time later, she decided to return to St. Thomas to live again, but before she could do so, she died on September 12, 1945, in Puerto Rico. The furniture and jewelry in question, therefore, is that which was in the house in Saint Thomas at the time of the execution of the will, but had been removed by the testator to Puerto Rico after the making of the will and was in Puerto Rico at the time of her decease. It is admitted by both sides that the furniture and jewelry in question is definitely identified as the same moved by the testator from the house Nos. 24 and 25 Hospital Ground in Saint Thomas, but it is claimed by residuary legatee, Virgilio Sainz, that the removal of the said furniture and jewelry by the testator before her death worked an ademption of this specific legacy to Erla Corneiro; and that the furniture and jewelry in question, therefore, is now a part of the residue of the estate.

The case of In re Barrows' Estate, 103 Vt. 501, cited by claimant, Virgilio Sainz, discusses this subject of ademption, and because its full analysis is necessary, I quote a part of it at length. The court therein said:

■-■ "A specific legacy is adeemed, and the legatee takes nothing, where the particular property has ceased to exist or has been disposed of by the testator during his lifetime. Thayer v. Paulding, 200 Mass. 98, 85 N.E. 868, 869; or where it is so changed in substance that it does not remain in specie at the time the will goes into effect. Ford v. Ford, 23 N.H. 212, 215. But not where the property, although somewhat changed, remains the same in substance. Havens v. Havens, 1 Sandf. Chan. (N.Y.) 324, 331, 332; Fidelity, etc. Co. v. Young, 101 Conn. 359, 125 Atl. 871, 873. The ademption may be *pro*

*tanto* only where a part of the property remains intact at the time of the testator's death. White v. Winchester, 6 Pick. (Mass.) 48, 57; Richards v. Humphreys, 15 Pick. (Mass.) 133, 137; Walton v. Walton, 7 Johns. Ch. (N.Y.) 258, 265, 11 A.D. 456. Questions of ademption usually arise in connection with some act of the testator with reference to the subject of the bequest, but may do so where there is an involuntary extinguishment of the property. See cases cited, 43 Harv. Law Rev. 1311.

"As to whether, in cases not involving a fortuitous destruction of the subject-matter, there must be an intention on the part of the testator in order to work an ademption, the authorities have not been harmonious. In Roman law, an *animus adimendi* was necessary. Just. Dig. Lib. 11, tit. 20, para. 12. But, by the decided weight of modern authority, intention is immaterial. Thus, in In re Brann, 219 N.Y. 263, 114 N.E. 404, L.R.A. 1918B, 663, 665, Cardozo, C.J., says: 'It was once thought that ademption was dependent on intention, and "it was therefore held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years this has ceased to be the law." . . . What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change.' And Shaw, C.J., in Richards v. Humphreys, supra, 15 Pick. (Mass.) page 135: 'A specific legacy of a chattel, or a particular debt, or parcel of stock, is held to be adeemed, when the testator has collected the debt, or disposed of the chattel or stock, in his lifetime, whatever may have been the intent or motive of the testator in so doing.' So, also, in Elwyn v. DeGarmendia, 148 Md. 109, 128 Atl. 913, 914, 40 A.L.R. 553, it is said that ademption 'is to be sought for in the facts of destruction or loss of the thing specified in the legacy or loss of its identity as specified, rather than in change of

intention on the testator's part.' Lord Chancellor Thurlow, in Stanley v. Potter, 2 Cox, 180, 182, held that, where the legacy was specific, *the only inquiry was whether the thing remained at the testator's death,* and, to quote his words, 'I do not think that the question (of ademption) in these cases turns on the intention of the testator.' To the same effect is Wyckoff v. Perrine, 37 N.J. Eq., 119, 122. Other cases, which it is not necessary particularly to notice, are in accord. Sec. 43 Harv. Law Rev. 1311; 42 id. 960; 1 Bouvier Law Dict. (Rawle's 3rd revision) tit. 'Ademption', pages 134, 135, for further citations."

■ The court held in the above case:

"We consider that the rule is supported by the weight of authority . . . that the test is whether the property remains in specie at the time of the death of the testator, . . ."

This case does not support claimant Virgilio Sainz' contention of ademption, as the property here still "remains in specie". Claimant, Virgilio Sainz, also cites the case of Dillender v. Wilson, 228 Ky. 758, which holds that "ademption is effected when by some act of the testator the subject-matter has ceased to exist in the form in which it is described in the will." It is clear in the instant case before us that the furniture and jewelry in question have not "ceased to exist in the form in which it is described in the will." It was merely moved intact to another location. The Wilson case, cited supra, also holds that "Ademption is the destruction or extinction of a bequest by means of the sale or other disposition of the thing specifically bequeathed and, therefore, held that there was no ademption in that case." Likewise, in the instant case before us, there was no "destruction" or "extinction" of the furniture and jewelry in question by means of sale or other disposition. The case of Tangons Administratrix et al. v. Tangon et al., 253 Ky. 374, follows the same line of reason-

ing. The case of Hastings v. Bridge, 166 A. 273, also follows the same line of reasoning. King v. Sellers, 194 N.C. 533, held that "ademption means extinction or withdrawal of legacy by testator's act equivalent to revocation or indicating intention to revoke", and following this reasoning this very case cited by claimant, Virgilio Sainz, held that ademption did not result as to $3,500 in money where testator had willed money in a certain bank to a certain person and before her death testator had withdrawn and moved the $3,500 to another bank, since it could be identified as the funds in question at the time of the execution of the will. The case of In re McLaughlin's Estate, 97 Cal. App. 485, cited by claimant, Virgilio Sainz, also holds that "a legacy is adeemed when the thing devised has ceased to exist in the form in which it is described in the will for the reason that, upon the death of the testator, there is nothing answering the description of the property which may be delivered to the legatee."

Although this case is cited by claimant, Virgilio Sainz, in support of his contention of ademption in the instant case, it is so clearly against it that it hardly needs comment, and the court decided in that case that there was no ademption of the legacy In the instant Tanggaard case the furniture and jewelry in question have not "ceased to exist in the form in which it is described in the will;" but is wholly intact and clearly identifiable. The above California case clearly states that "ademption is effected . . . for the reason that upon the death of the testator there is nothing answering the description of the property which may be delivered to the legatee." Here in the Tanggaard case the very identical property, intact, without change in any form and readily identifiable, is waiting to be delivered. This California case also held that the legacy in question therein was not adeemed where a wife had bequeathed a mortgage which she held on a piece of prop-

erty and later became possessed of the property itself, thus relieving the property of the mortgage which she formerly held against it. That case even held that "an alteration in the subject of the bequest which does not wholly destroy its identity is insufficient to adeem it."

Claimant Virgilio Sainz has cited many other cases, including In re Schmidt's Estate, 38 Atl. 1086 (Pa.), which is distinguishable by the fact that the will in that case provides for goods, etc. *"remaining* upon said farm"; but the Court finds that they all follow the same line of reasoning as the ones supra which I have commented upon.

■ ■ The Court is of the opinion and certainly there seems to be no disagreement between counsel that the bequest herein to Erla Corneiro was a specific bequest, and that specific bequests are subject to ademption in a case where ademption is operative. However, in the instant case there is no question as to the identity of the furniture and jewelry involved. Claimant, Virgilio Sainz, has also cited two New York cases which hold that the property descends as of the date of the *execution of the will,* which clearly means that Erla Corneiro is entitled to the furniture and jewelry which was in the house in Saint Thomas on October 18, 1943 (the date of the execution of the will), and later removed by the testatrix to Puerto Rico, since it can be clearly identified, and there is no reason existing whereby the doctrine can be invoked and applied that "upon the death of the testator there is nothing answering the description of the property which may be delivered to the legatee."

The two New York cases cited by claimant, Virgilio Sainz, hold (1) In re Donohue's Estate, 95 N.Y.S. 821, that the specific legatee is "entitled to whatever was at Schermerhorn street property at the time of the execution of the will," and (2) In re Delaney's Will, 117 N.Y.S.

838, "as to specific legacies the rule is well established that a will speaks as to the time of its execution."

Claimant Erla Corneiro has cited many cases but I will comment on only two of them which this court thinks clearly outlines the rule as to ademption. Chase v. Moore, 64 Atl. 221 (New Hampshire), holds that "where a testator devised to her brother all her personal property found on her real estate and afterwards sold her real estate and stored the personal property elsewhere . . . the personal property goes to her brother notwithstanding its removal from the real estate before her death." The case of Pendergast v. Walsh, 42 Atl. 1049 (New Jersey), gives us a clear outline of the test to be followed as to whether a specific legacy is or is not adeemed.

In that case the testator gave to her three sisters "provided they are all alive, or to the survivors of them whatever of my money now on deposit" in four banks in New York City (naming them) "which may be on hand and not otherwise disposed of, share and share alike." During her life the testator drew her money from the four New York banks and deposited it in another bank, where it remained until her death. Held, first, that the gift was specific; second, that it was not adeemed.

The court said: "The important question is whether the legacy was adeemed by the testatrix, and therefore the thing bequeathed was not in existence at the time of the death of the testatrix" and "she could have disposed of it by consuming it in living, or turning it into other property, or devoting it to a purpose inconsistent with the bequest. She did neither of these things, but on the contrary took the specific thing which she got from the bank, and kept it until April 1st following and then with a slight addition placed it in the Hoboken Bank." And "if the money remained practically the same money, then the removal of it from the place of its deposit did

not amount to an ademption," and "the place of deposit was merely used as descriptive of the thing bequeathed." It was used to identify the particular money given, and it is entirely settled that where the place is merely descriptive, the removal of the things to another place is immaterial.

■ Thus, in the case before us, the furniture and jewelry in question have not ceased to exist; have not been extinguished, sold, or the form or specie changed in any manner. It is definitely identified as that which was in the house in Saint Thomas on the day of the execution of the will. The property fully and unquestionably answers the description in the will.

The instant case is even stronger in fact than the [case of] Pendergast v. Walsh, supra, which involved money which was not the same identical money in the same bills as she deposited it, and here, even more clearly as the court said there, the testator could have disposed of this property, by consuming it in living, or destroying it, or turning it into other property, or selling it, or devoting it to a purpose inconsistent with the bequest. She did neither of these things, but on the contrary took the specific furniture and jewelry which she got from the house in Saint Thomas, to Puerto Rico, and there it remained intact and clearly identifiable until the time of her death.

It seems to be well settled by the weight of authority that ademption operates where the specific bequest is no longer in existence at the time of the testator's death, and nothing remains answering that description which may be delivered to the legatee; and not where its location only has been changed. The "change" referred to in the authorities cited, clearly means change in form or specie, and not change in location. Thus, where the property still exists, and can be identified as that property, its removal to another place or location is immaterial. The

85

rule is clearly stated in In re Farber's Will, 53 N.Y.S.2d 866, "Ademption of a legacy takes place when the thing which is the subject of the legacy is taken away, so that when the testator dies, the thing given is not to be found to answer the bequest." The last clause is therefore the test of how the thing bequeathed must be "changed", "withdrawn", "taken away" or "extinguished." The adeemed legacy must no longer exist anywhere in the testator's estate. Its form or specie as described in the will must have been changed or taken away or withdrawn or extinguished. Herein the furniture and jewelry clearly have not been changed in form or specie nor its identity even questioned. It remained intact, answering the description in the will of October 18, 1943, and can be delivered to the legatee.

Therefore this court is of the opinion that the furniture and jewelry in question herein, which was located in the house Nos. 24 and 25 Hospital Ground on October 18, 1943 (the date of the testator's will), now belong to Erla Corneiro, and that their removal to another place or location in Puerto Rico does not work an ademption.