# CLAY, ROBINSON & COMPANY v. B. B. LARSON and Another.[1]

April 24, 1914.

Nos. 18,449—(37).

**Foreign judgment conclusive.**

1. In an action tried in the circuit court of Cook county, Illinois, there was necessarily adjudicated between the contesting parties in this action the question whether advancements made by one litigating party under a bill of sale took precedence over a chattel mortgage of the other. It is *held* that the adjudication in the circuit court of Cook county is conclusive upon the same question involved in this action.

**Estoppel by judgment.**

2. It is the adjudication which determines the estoppel by judgment, or the estoppel by verdict, and not its correctness or the propriety of the method by which it is reached.

**Confusion of property.**

3. An owner of property which is intermingled and confused with similar property of another, without his fraud, and without his negligence, does not forfeit his property; and it is for the court to make a division of the property or its proceeds on such practicable basis as will likely result in giving to each his own.

Action removed to the district court for Clay county to recover $4,288.82. The supplemental complaint of defendant First National Bank of Culbertson against its codefendants Larson and Armstrong set up the adjudication of ownership of the cattle bearing the V M brand in an action between plaintiffs herein and the defendants herein in the circuit court for the county of Cook, state of Illinois, a court of general jurisdiction, and the terms of the decree of that court, alleged that the question of title and ownership of all the V M cattle had become *res adjudicata,* and that by such adjudication the title to the proceeds of the same had been adjudged to be vested in said bank. The case was tried before Taylor, J., who made

---

[1] Reported in 146 N. W. 1095.

findings and ordered judgment in favor of defendant Larson for the sum of $1,078.61, and in favor of defendant bank for the sum of $3,210.21. Defendant Larson's motion for amended findings was granted in part and denied in part. Defendant bank's motion for amended findings was denied. From an order denying his motion for a new trial, defendant Larson appealed. From an order denying its motion for a new trial, defendant bank appealed. Affirmed on both appeals.

*F. H. Peterson,* for defendant Larson.

*Christian G. Dosland,* for defendant bank.

DIBELL, C.

Pursuant to a petition in interpleader the plaintiff deposited the money in controversy in the German American Bank of Hastings, Minnesota, and was discharged from liability. The money amounted to $4,288.82 and was the proceeds of the sale of 182 head of cattle shipped to South St. Paul. The First National Bank of Culberston filed a complaint in intervention, to which B. B. Larson answered, and the issues were litigated between them. The court found that Larson was entitled to have $1,078.61, and the bank $3,210.21, of the money in controversy. Both parties appeal.

In April, 1902, B. B. Larson, and others, purchased a trainload of cattle and shipped them to Culbertson, Montana. Three hundred and ninety-two head were sold to Comer Armstrong, who gave Larson his note for $6,897 and a chattel mortgage upon the cattle purchased, and also upon 81 native cattle. The cattle were given a registered brand commonly known as the quarter circle V M brand.

In 1903 Larson and others purchased and shipped another trainload of cattle to Montana and sold 266 head to Armstrong for the sum of $5,477.70, and he gave a chattel mortgage upon the cattle purchased, and also upon all other cattle owned by him bearing the quarter circle V M brand. The note secured by the chattel mortgage finally became the property of the First National Bank of Culbertson. The mortgage of 1902 is concededly prior to the mortgage of 1903, for all the parties interested had knowledge of the earlier mortgage.

Because of the severity of the weather and for other reasons there was great loss among the cattle. In the spring of 1904 Armstrong was financially unable to feed or care for his stock. On May 17, 1904, he made a bill of sale of all his cattle and horses, and executed a lease of his ranch, to Larson, who agreed to furnish the money for the care of the stock, and to pay Armstrong an agreed salary for looking after them. This bill of sale covered many other cattle than the Minnesota cattle. A contemporaneous agreement was made whereby Armstrong might get back the property included in the bill of sale. Within the next two years Larson advanced in excess of $12,000 in feeding and caring for the stock.

1. Larson claims that by agreement his advancement of $12,000 is entitled to priority of payment out of the proceeds of the sale of the cattle. This the bank denies.

In August, 1906, 26 head of the cattle were shipped to Chicago and were sold by Clay, Robinson & Co. a partnership. In a contest in the circuit court of Cook county, Illinois, between Larson and the Culbertson bank over the proceeds of this sale, there was involved and necessarily determined whether Larson's $12,000 advancement under his bill of sale took precedence of the Culbertson bank mortgage. The master in chancery found that it did not. The judgment entered upon the master's report adjudicated that the bank mortgage was prior, and it was an adjudication necessary to the determination of the litigation. The fact adjudicated is *res judicata* between Larson and the bank. The effect of the judgment is not that of an absolute bar by judgment, but what is usually called an estoppel by verdict, as distinguished from an estoppel by judgment, and effectually concludes the question actually and necessarily litigated and determined. Swank v. St. Paul City Ry. Co. 61 Minn. 423, 63 N. W. 1088. It does not conclude the question of the ownership of the 182 cattle shipped to South St. Paul.

2. Counsel for Larson claims that the finding of the master in chancery is based upon an entire misconception of the proper method of weighing evidence and that the result he reached was inaccurate. It seems likely that it was, but it matters not. The fact of the adjudication, the other necessary conditions existing, makes the ad-

125 M.—18.

judication a bar by judgment, or an estoppel by verdict, and not its correctness or the propriety of the method used in reaching the result.

3. Originally there were 473 head of cattle upon which Larson's mortgage was a first lien, and 266 head on which the mortgage of the Culbertson bank was a first lien, making 739 head altogether. The loss was so great that when the cattle came to be sold they aggregated, including their increase, only 421 head. The court divided the total proceeds of the sales in proportion to the number of cattle originally belonging to the two lots. The cattle had run together in a common herd. All bore the quarter circle V M brand. The second lot shipped from Minnesota had originally a trailing brand known as an open A brand. The practice at the South St. Paul yards is to divide the cattle according to the registered brand and to pay no attention to the unregistered brand if the registered brand can be found. If occasion required, the consignee would look for the unregistered brand. Larson claims that, the property having become confused and intermingled and not subject to exact identification, the Bank of Culbertson should forfeit its property. We cannot adopt this view. There was no finding of either fraudulent or negligent confusion of property, nor did the evidence require such finding, and there was no ground of forfeiture. 8 Cyc. 570; 6 Am. & Eng. Enc. (2d ed.) 593–595. It is not necessary to hold that negligence would result in a forfeiture. There may be some authority to that effect, and there is positive authority against it. We are assuming the law to be favorable to Larson. All of the parties knew of the ordinary method of dealing with range cattle at South St. Paul. It was for the court to adopt such method of distributing the proceeds as would most likely be just to both. This it did. The division was made accurately upon the basis adopted.

We have not attempted to state all the facts involved in so complicated a transaction and the figures given may not always be strictly accurate. Enough has been stated to illustrate the application of the law and to explain the basis of our decision.

Affirmed on both appeals.