# INTERNATIONAL LUMBER COMPANY v. BRADLEY TIMBER & RAILWAY SUPPLY COMPANY.[1]

January 28, 1916.

Nos. 19,387—(61).

**Replevin — wilful confusion of goods — theory of case.**

Action in replevin to recover all of the lumber in the yards of defendant, on the theory that the defendant had wilfully and with intent to defraud mixed lumber sawed from logs belonging to plaintiff with its own, resulting in an inextricable confusion of goods. It is *held:*

(1) By insisting on the trial that it was entitled to recover all of the lumber or its value, and expressly consenting to an instruction to the jury that the verdict must be for the value of all the lumber, or a verdict for defendant, plaintiff waived the right to recover for the lumber sawed from its logs.

(2) An instruction to the jury to the effect that plaintiff was entitled to recover if the jury believed from the evidence that defendant's acts were intentional, wilful and fraudulent, but not if they believed such acts were due to mistake, inadvertence or mere negligence, there being no objection or exception by plaintiff, and the instruction being in accord with the theory of plaintiff on the trial, is the law of the case, and

[1] Reported in 156 N. W. 274.

plaintiff cannot now urge that the law is otherwise than as stated in the instruction.

(3) The evidence sustains the finding of the jury that defendant's acts were not intentional, wilful or fraudulent.

(4) There was no error in the rulings on the admission of evidence.

Action of replevin in the district court for Koochiching county for $20,000, the value of the property, and $2,000 damages for its detention. The case was tried before McClenahan, J., and a jury which returned a verdict for defendant. Plaintiff's motion for a new trial was denied. From the judgment entered on the verdict, plaintiff appealed. Affirmed.

*Harris Richardson* and *Walter Richardson,* for appellant.

*Baldwin, Baldwin & Holmes, Franz Jevne* and *Marshall A. Spooner,* for respondent.

BUNN, J.

This is an action in claim and delivery, or replevin, in which plaintiff demands judgment for the immediate return and possession of two million feet of lumber or the value thereof, stated to be $20,000. The complaint alleged that defendant wrongfully caused to be sawed into lumber logs of plaintiff wrongfully taken from the Big Fork river, and caused the lumber to be piled in the mill yard of the State Lumber Company near the town of Gemmell in Koochiching county. The sheriff took the lumber under the writ of replevin, but defendant rebonded. The answer alleged that defendant was the owner of the lumber in question, except a small amount, not exceeding 2,000 feet, which belonged to plaintiff, coming into defendant's possession inadvertently and through mistake, for which defendant was and is ready and willing to pay plaintiff. The reply was a general denial. The case was tried to a jury, and the result was a verdict for defendant. Plaintiff moved for a new trial, the motion was denied and judgment entered on the verdict. This appeal is by plaintiff from the judgment.

Plaintiff's case is based upon the doctrine of confusion of goods. It was admitted in the answer and on the trial by defendant that a few of plaintiff's logs were taken from the river by defendant, shipped to Gemmell, sawed into lumber at the mill of the State Lumber Company there and piled with defendant's own lumber in the yard at Gemmell.

The claim of defendant was that this was done through mistake and inadvertence and not wilfully. Plaintiff contended that a large number of its logs were taken from the river by defendant, sawed into lumber, and the lumber piled in the yards with its own lumber, and that this confusion of goods was wilful and intentional on the part of defendant. There is no doubt that plaintiff's log marks appeared on many different pieces of lumber in the piles in the yards at Gemmell as well as upon sawed-off ends, slabs and trimmings, which were found in the mill yard and upon 290 spruce and tamarack pulpwood logs found in the pond of the State Lumber Company's mill at Gemmell, of which 258 were afterwards shipped back by defendant to the Big Fork river, the other 32 being culls and worthless, according to defendant's witnesses. It is not necessary to detail the evidence of the respective parties in regard to the probable extent of defendant's appropriation of plaintiff's logs; it appears very clearly that some of the lumber in the various piles in the yards at Gemmell was undoubtedly sawed from logs belonging to plaintiff, and taken out of the Big Fork and shipped to the mill at Gemmell by defendant; it appears with equal certainty that the amount of this lumber, if not in itself inconsiderable, was small when compared with the total amount of lumber in the yards, which is what plaintiff seeks to recover in this action by applying the doctrine of confusion of goods. This fact is important only as it bears upon the question whether the jury was justified in finding defendant innocent of wilfully taking and mixing defendant's goods with its own. That this is the pivotal question on this appeal will, we think, clearly appear.

1. Defendant does not dispute that plaintiff was originally entitled to either the return of the lumber sawed from its logs or to the value thereof, but insists that plaintiff waived the right to this relief by insisting all through the trial that it was entitled to recover all of the lumber seized on the writ, and by expressly consenting to the instruction of the court to the jury that the verdict must either be for $20,000, the value, as alleged in the complaint, of all the lumber described in the complaint, or a verdict for the defendant. We hold with defendant on this point. Plaintiff has waived its right to recover the lumber sawed from its logs or its value.

2. Whether the doctrine of confusion of goods can be applied where the intermixing is the result of negligence only, without wilfulness, is possibly a debatable question under the authorities. (Judge Dibell discusses this point in Clay, Robinson & Co. v. Larson, 125 Minn. 271, 146 N. W. 1095. The decision is not that mere negligence is insufficient to work a forfeiture under the doctrine of confusion of goods, but it indicates a leaning toward what we believe is the prevailing rule on this question, that is, that where the confusion results from accident, mistake or negligence, but without any fraudulent intent, the property in the mixture does not pass to the several owners, but they become tenants in common in proportion to their several interests. While it is probable that we would adopt the rule indicated in the case cited, and also in Stone v. Quaal, 36 Minn. 46, 29 N. W. 326, and D. M. Osborne & Co. v. Cargill Ele. Co. 62 Minn. 400, 64 N. W. 1135, and which seems to be supported by the great weight of authority, we think that it appears conclusively that plaintiff planted and tried its case on the theory that defendant's acts were done wilfully and with intent to defraud plaintiff and that it was necessary to so prove in order to recover. The complaint alleged that the acts of defendant complained of were done wrongfully and with intent to cheat and defraud plaintiff, and contained no allegation that they were negligently done. No evidence on the trial was directed to the question of negligence.) The court instructed the jury that if they believed from the evidence that the acts of defendant were intentional, wilful and fraudulent, plaintiff was entitled to recover, but if they believed that these acts should be accounted for upon the theory of mistake, inadvertence or even bare negligence, the verdict must be for defendant. Defendant took no exception to this instruction, did not object to it below and does not here. There were no requests for instructions. The law as stated in the charge became the law of the case. It is plainly too late now to insist that this was bad law, and that plaintiff could recover if defendant's acts were negligently done.

3. The pivotal question then is, was the jury justified by the evidence in finding that the confusion of goods was not due to wilful, intentionally fraudulent conduct on the part of defendant?

(If it appeared that defendant wilfully and fraudulently mixed plaintiff's lumber with its own with the result that there was an inextricable confusion of goods, plaintiff would have been entitled to recover the entire

mass, unless defendant was able to distinguish its property specifically. That this is the rule is conceded by defendant. But, before this rule is applicable, it must be shown not only that there is a confusion of goods, but that the intermixing was done wilfully, with fraudulent intent. And the burden of proof is with plaintiff on both of these issues.) Assuming that the lumber sawed from plaintiff's logs was not capable of identification; and therefore that there was an inextricable confusion, we reach the question whether the jury was justified in believing from the evidence that defendant's acts could properly be accounted for on the theory of mistake, inadvertence or even negligence, and in refusing to find that such acts were intentional, wilful and fraudulent.

We have mentioned the inconsiderable amount of plaintiff's lumber contained in the piles when compared to that admittedly owned by defendant, and that this fact has a bearing upon whether the confusion was the result of mistake or negligence, or of a wilful intent to deprive plaintiff of its property. There was a mass of evidence directed to the extent of defendant's appropriation of plaintiff's logs, and the amount of the lumber sawed therefrom and contained in the yards, but the net result of our consideration of this evidence is the statement that it was conflicting and that the jury was clearly warranted in finding that a comparatively very small portion of the total contents of the lumber piles was lumber sawed from plaintiff's logs.

Logs belonging to plaintiff, to defendant and to other owners, were being floated down the Big Fork river. Plaintiff's logs were marked on the ends with its log mark, which was known to defendant. Defendant had sorting and hoisting works at Big Falls, and took the logs bearing its mark from the logs floating down the river; hoisted them from the river; loaded them upon flat cars and transported them to the mill at Gemmell. It is not denied that from time to time it hoisted, loaded and transported some of plaintiff's logs with its own. It is a bit difficult for us to see how defendant could do all this and follow by sawing the logs into lumber, through mistake or inadvertence; but we are not the jury, and there was evidence tending to show that it was not unusual to find among the logs of one owner, taken out of a common mass in this way, logs with the marks of other owners upon them. According to the testimony of an experienced lumberman, this is almost always

the case. It was also in evidence that defendant's superintendent requested plaintiff to have some one look after its stray logs in defendant's yard, but that plaintiff's president sent word·to the superintendent to look after his own logs; also that a suggestion that a settlement could be made was met by plaintiff's president with the statement that he did not want to settle. Furthermore, it was testified to that defendant had provided facilities in its boom for letting out foreign logs; that its employees were instructed to look out for logs of other owners and to let them go; that such logs often got into the boom in spite of anything that could be done to prevent it and that, in many cases, the marks were obscured by mud and slime.

We need not refer to the other evidentiary facts bearing on the question of defendant's good faith. We have carefully considered the entire record and reach the conclusion that the question was for the jury and that the evidence sustains the verdict. Under the familiar rules which control our action in regard to disturbing the verdict of a jury after the trial court has approved it, we are forced to the result stated.

4. It is urged that the trial court erred in a number of its rulings on the admission of evidence. No one of these claims of error deserves specific discussion or mention. We have examined and considered each ruling complained of, and conclude that no error was committed.

Judgment affirmed.