## C. L. SWANSON AND OTHERS, COPARTNERS AS SWANSON, GILMORE & CASTENHOLZ v. ST. PAUL UNION STOCK YARDS COMPANY AND OTHERS.[1]

October 19, 1923.

No. 23,567.

**Evidence sustained verdict as to ownership of cattle.**

1. Evidence considered and *held* to justify a holding that respondents were the owners of 168 head of cattle, received by appellant at its yards, to be unloaded, watered, fed and reloaded for further transportation.

[1]Reported in 195 N. W. 453.

**Owners entitled to their proportionate share from proceeds of sale of inter-
mingled cattle.**

2. The owners of cattle which become intermingled with similar
cattle, while in transit, so that their identification becomes impossible,
may recover their proportional share of the net proceeds from the sale
of the whole number so commingled.

**Rulings on evidence correct.**

3. Record examined and we find no reversible error in the rulings
upon the admissibility of evidence, nor in the charge.

Action in the district court for Dakota county to recover $2,500.
The case was tried before Johnson, J., who at the close of the tes-
timony denied defendant stock yards company's motion for a direct-
ed verdict, and directed verdicts in favor of the other defendants.
From an order denying its motion for judgment notwithstanding
the verdict or for a new trial, the St. Paul Union Stock Yards Com-
pany appealed. Affirmed.

*D. L. Grannis* and *K. D. Stalland,* for appellant.

*Ryan & Murphy* and *John A. Burns,* for respondents.

QUINN, J.

Action to recover the value of 23 head of cattle, lost while in
transit from Manitoba to Chicago. The trial court directed a ver-
dict in favor of plaintiffs and against the defendant St. Paul Union
Stock Yards Company, submitting to the jury only the question of
the amount which plaintiff was entitled to recover under the proofs,
and directed a verdict in favor of each of the other defendants.
From an order denying its alternative motion for judgment or for
a new trial, this appeal was taken. On September 17, 1920, the
defendants L. C. Barton and the Barton Cattle Company shipped
from the Union Stock Yards in Manitoba, Canada, 7 cars containing
168 head of cattle, to the plaintiff at Chicago. These cattle were to
be unloaded, fed and watered at the St. Paul Union Stock Yards at
South St. Paul, where they arrived on the day of shipment.

At the outset of the trial, plaintiff called for cross-examination
Mr. Handy, superintendent of appellant's stockyards. He testified,
in substance, that appellant's stockyards contained pens designated

as "Yards for Canadian Cattle;" that each of these pens has a capacity of about one car of cattle; that it was the custom, when unloading, to turn each car of cattle into a separate pen; that, in so doing, the cattle, in passing from the car through the chute into the pen, were counted; that there were two books, known as chute books, kept by the person whose duty it was to load the cattle into, or remove them from such pens, and in these books were entered the car number, the initials of the consignor and of the consignee, the number of cattle, the pen into which they were placed, and the name of the party to whom the same were thereafter delivered; that such books were the books of original entry kept by appellant.

The witness further testified that the man, whose name appears on the face of the chute books as having made the entries, was in appellant's employ, and it was this employe's duty to check the cars in the yard. The chute book for unloading shows the receipt of cars numbered 35,292, 88,919, 5,380, 5,005, 56,104, 45,172 and 16,500 and the pen into which each car was unloaded. These books contain the initials of the consignor and of the consignee, taken from the way-bills, and were received in evidence subject to the objection that no proper foundation had been laid therefor and that they were not the best evidence. We do not agree with appellant's contention in this regard. The books contain the only record of the matters therein entered. They were made and preserved in the usual course of business, and were admissible in the nature of an admission as to the stock received at appellant's yards, and the number returned to the carrier.

It appears that appellant's treasurer issued and delivered to respondents four certificates which show upon their face that, on September 17, 1920, appellant unloaded, watered and fed 168 head of cattle, which arrived at its yards in South St. Paul in the 7 cars above referred to; that these cars of cattle were billed and shipped via the Northern Pacific Railroad from the Union Stock Yards in Manitoba; that three of these cars were billed by L. C. Barton and four by the Barton Cattle Company, and consigned to the plaintiffs at Chicago; that, after said cattle were watered and fed, appellant caused 145 head thereof to be reloaded into 6 cars and delivered to

the Omaha road for transportation to the plaintiffs at Chicago. The plaintiffs received the 6 carloads at Chicago, but appellant has never accounted in any manner for the other 23 head. It clearly appears from the record in the case that the missing cattle became mixed with other cattle while in appellant's yards, and that the appellant, as is usual under such circumstances in its business, turned the mixed cattle over to a commission company and they were sold, and the proceeds turned over to the appellant. Under such a showing, we think the trial court was justified in directing a verdict in favor of the plaintiffs and against the appellant for the amount which it received for the 23 head of cattle here in question.

Plaintiff's Exhibit H is a statement of the Haas Commission Company to whom the intermingled cattle were turned over by the appellant for sale. This sheet discloses that there were 98 head of these cattle. It also discloses the weight of the same and the price for which they were sold, the total amount received for them, as well as the expense of feeding, caring for and selling the 98 head. The contention of the respondent is that the 23 head of cattle in controversy became so mixed with 75 head of other cattle that identification became impossible, and therefore they were entitled to their proportional share of the net proceeds received by appellant from the sale of the 98 head of commingled cattle, under the rule announced in International Lumber Co. v. Bradley T. & R. S. Co. 132 Minn. 155, 156 N. W. 274; Clay, Robinson & Co. v. Larson, 125 Minn. 271, 146 N. W. 1095; Stone v. Quaal, 36 Minn. 46, 29 N. W. 326; D. M. Osborne & Co. v. Cargill Elev. Co. 62 Minn. 400, 64 N. W. 1135.

The trial court adopted the theory of the respondent as to the measure of damages, and submitted the case to the jury along those lines. Under the conditions, plaintiffs were entitled to recover their proportionate share of the net proceeds of the sale of the 98 head of cattle. This is as favorable to the appellant as it can fairly ask. We find no reversible error in the rulings upon the admissibility of evidence, nor in the charge to the jury.

Affirmed.