MARY A. DARRINGTON AND OTHERS vs. WILLIAM ROGERS AND OTHERS.—*December*, 1843.

The election of a widow to stand upon her legal rights, though it occasion loss to devisees under her husband's will, is still a loss resulting by operation of law, and against which the testator only could have provided an indemnity.

By the election of a widow to renounce her husband's will, all devises and bequests made to her are inoperative and void; and the property given to her, except so far as it may be diminished by the exertion of her legal rights, remains as if no such devises to her had been made.

Apart from the act of 1810, concerning lapsed legacies and devises, it stands precisely in the condition in which it would have stood had the wife died in the life-time of the testator.

Where the testator directed the sale of all his real and personal estate, and disposed of the proceeds of sale, and all the residue and remainder of his estate generally, the one moiety to trustees for the benefit of his wife and children in the manner specified in his will, and the other moiety to trustees for the benefit of the complainants, if, from any cause, the legacy to the wife lapsed, it could not sink into the general residue.

Where a testator divided the residue of his estate into moieties, and devised them to two distinct classes of devisees, one of them his children and heirsat-law, the other collateral relations, but directed that his widow should have a portion of the moiety given to the children in lieu of dower, and she renounced the will, her portion will be deducted from the moiety given to the collateral relations, as the legacy to her, in consequence of her renunciation, becomes a residuum unaffected by any testamentary disposition, and as such vests in the testator's heirs or next of kin.

By the act of 1830, ch. 185, it was declared that no appeal shall hereafter be allowed from any decree or order of the Court of Chancery, unless it be a final decree or order in the nature of a final decree. HELD : that an appeal from an order referring a cause to the Auditor, for an account, with directions as to the mode of stating it, was not authorised under that act.

APPEAL from the Court of Chancery.

On the 11th October, 1841, the appellants filed their bill, alleging that they were legatees mentioned in the last will of *Zachariah Woollen,* who died in August, 1837; that by its provisions the real estate of the deceased is directed to be sold by his executors, and after payment of his debts, one half of the net proceeds are directed to be invested or lent out on mortgage, or on security, &c., and the rents and profits, &c., arising therefrom to be applied for the separate use and sole benefit of the complainants; that *Rebecca Woollen,* widow of the testator, *Williams Rogers* and *James Tracey,* were constituted executors by the will; that *J. T.* renounced his appointment; that letters testamentary were granted to the other two; and that *Rebecca* has since married with *Edward S. Myers.* The bill then alleged that the executors had settled several accounts, some of which were intended to be contested; that complainants had received less than half the interest due them in four years, since the death of the testator; that the complainants are informed and believe that the executrix and executor, (which last is also trustee,) insist that the complainants are not entitled to the use and benefit of one equal moiety, or half part of the said estate, but that they are entitled to one-half after deducting a proportion of the said *Rebecca,* as widow, she having refused to abide by the will; renouncing the provisions in her favor, and relying on the provisions of law in her behalf, against which construction of the will these complainants protest; that the testator at his death left three children, all of whom still survive and are infants of tender years; that the trustees under the will have failed to invest one-half of the net proceeds of the estate for the use and benefit of complainants. Prayer for relief according to the will, sale and investment, subpœna, &c.

The testator by his last will devised as follows: "Item: I hereby direct my executrix and executors, hereafter named, or the survivors, or acting ones of them, to sell and dispose of, at, &c., to the best advantage, all my real, leasehold and personal estate, except my household and kitchen furniture; and

upon receipt of the purchase money therefor, make, execute, &c., to the purchaser, one or more good and sufficient deed or deeds of conveyance for the same, the proceeds arising from which sale, with all the residue and remainder of my estate, generally, I devise and dispose of in manner following, that is to say :

*First.* One moiety, in which is to be included all my household and kitchen furniture, I devise and bequeath unto my friends *William Rogers* and *James Tracy*, and the survivors, and survivor of them, and their, &c., in trust; nevertheless, that the same shall be held and invested by the said trustees, or, &c. in some productive stock, &c., or placed out at interest, on, &c.; and the investments from time to time to change, &c.; and that my beloved wife, *Rebecca Woollen*, during her widowhood, be permitted to have, receive, and apply the dividends, rents, profits, interest and income, arising therefrom, to the support of herself, and to the support and education of our dear children, during their minority; and from and immediately after the intermarriage of my said wife with any other person, then in trust, that the one-third of the principal of the said moiety, or half part of my estate, shall become the property of and be forthwith conveyed, assigned and transferred to my said wife, *Rebecca*, her, &c., absolutely; and the remaining two-thirds thereof shall become the property of and be equally divided between the children I now have, or the child or children I may hereafter have, their heirs, &c., absolutely, as tenants in common, share and share alike; but in case my said wife shall *not* intermarry with any other person, then immediately after her decease, the principal of said entire moiety or half part of my estate, shall become the property of and be equally divided between the children I now have, and the child or children I may hereafter have, their heirs, &c., absolutely, as tenants in common, share and share alike, the issue of any deceased child, if any such issue there should be, either in the division of the two-thirds or of the whole of said moiety, to have and take the part or share only to which the parent of such issues would, if living, be entitled. And in the event of the decease of any

of my chiidren, under age and without issue, the part or share of him, her or them, so dying, shall descend to the survivors or survivor of them.

*Secondly.* And the remaining or equal half part of my estate I devise unto my said friends *William Rogers* and *James Tracy*, and the survivors, &c., in special trust, *that* the same shall be held and invested by the same trustee, &c., in some productive stock, &c., or placed out at interest on good mortgage, &c., and the investments from time to time, to change, &c., *for the period of five years from the time of my decease,* and that during that period my sister, *Mary Ann Darrington,* and her children, *Mary Ann Craig, &c.,* be permitted and suffered in equal proportions, to take, receive, and have applied, for their separate use and sole benefit, the dividends, rents, &c., arising therefrom, without being subject to the control of their respective husbands, or bound for the fulfilment of their contracts. And at the expiration of said five years, then in trust, that *one equal thirteenth* part of the principal of said moiety shall be conveyed, &c., and paid over. And I do hereby devise the same unto my said sister *Mary Ann Darrington,* her, &c., absolutely, one other equal part of the principal of said moiety shall be conveyed, &c. And I do hereby devise the same unto my said nephew *William Lovell,* his, &c., absolutely. And in trust as to the remaining *eleven-thirteenths* thereof, that each one of my other nephews above named, until they severally attain the age of twenty-five years; and each one of my nieces above named, during their respective natural lives, be permitted and suffered to take, &c., to their sole and separate use and benefit, respectively, one-eleventh part of the dividends, rents, &c., arising therefrom, without, so far as it relates to the portions of all my nieces above named, being subject to the power, &c. And in trust, as my nephews, hereinbefore named, severally attain to the age of twenty-five years, that one-eleventh of the principal estate shall then be conveyed, assigned, transferred and paid over. And I do hereby devise such one-eleventh to each of them respectively, their heirs, executors administrators and assigns,

absolutely. And in further trust, that my nieces hereinbefore named, respectively may, and I do hereby fully authorise and empower them, respectively, by any instrument of writing, in the nature of, or purporting to be, her last will, &c., to devise and dispose of one-eleventh of the principal estate to such person or persons, or for such uses and purposes as my said nieces respectively shall think proper and direct; and in case any of them shall neglect or omit to make such devise, bequest or disposition of such one-eleventh, then in trust, that such one-eleventh shall descend to, and become the property of. And I do hereby devise and bequeath the same unto the child or children of my nieces respectively, who shall so omit or neglect to make disposition thereof, as before authorised, and to the heirs, &c.; if more than one, to be equally divided between them, as tenants in common, share and share alike. But in case any of my nieces, so omitting to make a will and testament, shall depart this life, without leaving a child or children, or descendants of the same, living, then in trust, that the one-eleventh of the principal estate of my niece or nieces, so dying, &c., shall descend to, and become the property of; and I do hereby bequeath the same, absolutely, unto the right heirs of such niece or nieces, respectively. And in case any of my nephews or nieces, hereinbefore named, shall depart this life, under lawful age, and without issue, the part and share of my estate, devised to or for the benefit of him, her or them, so dying, shall descend to the survivors or survivor of them.

*Lastly.* I do hereby nominate and appoint my said beloved wife, *Rebecca Woollen,* and my friends, *William Rogers* and *James Tracy,* to be executrix and executors of this my last will and testament. And I also appoint the two last above persons to be guardians of my children, hereby revoking all former wills by me made, and declaring this to be my last and only one.

With this will were also filed—

The renunciation of *James Tracy* as executor and trustee.

The renunciation and election of *Rebecca Woollen* as widow.

Various accounts of the administration of *Z. W's.* estate.

After the answers of the several defendants were filed, at March term 1842, the Chancellor (Bland,) passed an order, directing a sale of *Z. W's.* real estate, and appointed a trustee for that purpose as usual; and after notice to creditors to file their claims, he further ordered, that the said executors, the defendants, *William Rogers,* and *Edward S. Myers* and *Rebecca,* his wife, account with the other parties to this suit, of and concerning the personal estate of the said *Zachariah Woollen,* deceased, which may have come to their hands, or been distributed by them, or otherwise. And this case is hereby referred to the auditor, with directions to state such account accordingly, from the pleadings and proofs now in the case, and such other proofs as may be laid before him, in which he will distribute the said personal estate of the deceased, so far as it will go; in the first instance, among his creditors in satisfaction of their claims, and then the proceeds of the sale of the said real estate in discharge of so much of the said claims as may have been so left unsatisfied from the personal estate. And then, considering the will of *Zachariah Woollen,* deceased, as operating only upon so much of his estate as he might thus lawfully dispose of, the auditor will award to the said *Rebecca Myers,* as the widow of the said deceased, her legal distributive share of the surplus, if any, of the said personal estate, together with the value of her dower, out of the whole net amount of the proceeds of the sale of the said real estate, to be ascertained according to the rule of the court, and then the auditor will distribute the residue of the proceeds of the sale of real estate, together with the residue of the surplus, if any, of the personal estate; first, dividing the same into equal moieties, as directed by the last will and testament of the said *Zachariah Woollen,* deceased; and the parties are hereby authorised to take testimony in relation to the said accounts and statements, before any justice of the peace, on giving three days notice, as usual; provided, that the said testimony be taken and filed in the chancery office, in this case, on or before the expiration of the time allowed to creditors to file the vouchers of their claims as aforesaid.

From this decree, the complainants, who were entitled to the moiety, secondly devised by the said *Z. W.*, appealed to this court, having filed in the Court of Chancery the following agreement:

It is understood, and hereby declared, that the complainants, in appealing from the decree of his Honor the Chancellor in the above case, do not mean thereby to delay or interfere with the execution of the duties of the trustee, nor with the adjustment of the accounts of the executors of *Zachariah Woollen* with said complainants, nor with any of the other directions of said decree, *than that which allows and awards to said complainants one-half of two-thirds only of the net proceeds and balance of the real and personal estates of said Zachariah Woollen;* the said complainants claiming and protesting that they are entitled to one-half of the whole of said net proceeds and balance, and this they design to urge on said appeal.

The cause was argued before STEPHEN, DORSEY, CHAMBERS and SPENCE, J.

By N. WILLIAMS and W. SCHLEY for the appellants, and By W. F. FRICK for the appellees.

DORSEY, J., delivered the opinion of this court.

The testator having directed the sale of all his real and personal estate, without any preceding devises or bequests, declares that he gives and disposes of the proceeds of sale, "and all the residue and remainder" of his "estate generally," the one moiety or half part thereof, to trustees, for the benefit of his wife and children in the manner specified in his will, and the remaining moiety or half part, to trustees, for the benefit of the complainants. The testator thus divided his estate into two separate and distinct moieties; giving each moiety to different persons; and by nothing that appears in the will, can we even raise an inference, that upon any contingency or condition that might happen, the whole or any portions of those distinct moieties were ever again to commingle; or that the legatees, entitled to one moiety, should ever become entitled

to any portion of the other.   In the contemplation of the testator, as far as we can collect it from the face of the will, the moieties were intended to be as completely separated and as permanently distinct from each other, as if they had never formed one common fund or residue and remainder.   It is true that the testator had made bequests, to his wife, out of one of those moieties, which he thought would have been a sufficient temptation to have prevented her from asserting her legal rights to his estate.   But for the event of her doing so, he has provided no change or substitution in the testamentary disposition of his property.   And he having failed to do it, we cannot do it for him; the more especially as it would, *pro tanto*, work the disheritance of his children and heirs at law.   The election of the widow, to stand upon her legal rights, does, it is true, occasion loss to the appellants; but it is a loss resulting by operation of law, and against which the testator only could have provided an indemnity.   The condition of the children, too, was changed by the election of their mother: they might also have sustained loss, by receiving less than their father had given, and by his will designed to have given them.   Suppose the widow had died immediately after having made her election, what would have passed to the children under their father's will?   Two-thirds of a moiety of his personal estate, and a moiety of the real estate, subject to a dower.   But suppose she had died, about the same time, without any renunciation of the bequests made to her by the will, what then would the children have received?   By the express terms of the devise to them, an entire moiety of their father's estate, both real and personal.

Upon the election of the widow, all devises and bequests made to her by the will were inoperative and void; and the property given to her, except so far as it may be diminished by the exertion of her legal rights, remains as if no such devises and bequests had ever been made to her.   Apart from the act of 1810, concerning lapsed legacies and devises, it would stand precisely in the condition in which it would have stood had the wife died in the life-time of the testator.   In

such a condition of things, would not the limited temporary interest of the wife (under the will) in the moiety, have sunk and passed, under the limitation, over to the children in perpetuity? By the marriage of the wife subsequent to her renunciation of her husband's will, no change is wrought in her rights or the rights of other persons in the estate of the testator. The rights of all parties remain the same that they were when the renunciation was made, and that they would have been, had no such provision, in relation to the second marriage, been contained in the will. But should we regard this contingent legacy to the wife, after her election, as so far continuing to operate, as upon the happening of the contingency, to become a lapsed legacy, it could not sink into that general residue and remainder, which, by the express direction of the testator and in legal contemplation, had antecedently been divided, and of one of which divisions it formed a part. Under the devises and bequest to the complainants, we think it manifest, that no part of it passed. See the cases of *Wisner vs. Barnet and al*, 4 *Wash. C. C. R.* 631. *Cruse vs. Barley*, 3 *P. Wms.* 20. *Davers vs. Dewes*, 3 *P. Wms.* 40; *and Collins vs. Wakeman*, 2 *Ves. jr.* 683.

But suppose we are wrong in the construction we have given to the will, under the contingencies that have occurred, in regarding the entire moiety as passing to the children under the devise in their favor, subject only to the rights of the widow, in virtue of her election. The legacy to the widow, in virtue of her renunciation, having lapsed or become void, and failing to pass under any of the devises or bequests in the will, becomes a residuum of the testator's estate, unaffected by any testamentary disposition, and as such, vests not in the complainants, but in his children, as heirs and next of kin.

This case has been brought up to this court by appeal, contrary to the provisions of the act of 1830, ch. 185, and must therefore be dismissed. In venturing, under such circumstances, at the earnest solicitation of the solicitors of both parties, to express our opinion upon the merits of the present controversy, we wish it to be distinctly understood, that this act of

the court is not to be regarded as a precedent to be followed in any future similar appeal. There is already more business, legitimately before us, than can be definitively disposed of before we shall be called on to attend the courts in our districts; it cannot therefore be reasonably expected, that we should suffer our time to be consumed in the argument of cases, for the decision of which, we have no jurisdiction.

**APPEAL DISMISSED.**