## Gallagher's Estate.

1. A testator made bequests and devises to his wife, also, general pecuniary legacies to others; he gave to Zeigler "during his natural life the interest of $2500, owing by the Sulouffs and secured by mortgage; * * * and if the principal be paid in the life of Zeigler, I direct the same to be reinvested, to secure the payment of the annual interest to him." He also made a residuary bequest. The widow elected to take against the will. The balance on the executors' account did not include the mortgage, which had some years to run. The Orphans' Court decreed that one-half the balance of the personal estate as it appeared on the account should be paid to the widow as her share under the intestate laws; that all the legacies should be paid from the remainder; that from a balance still remaining, the executor to retain $1250, that he might on the maturity of the mortgage, supply the half of it, to be taken by the widow and invest $2500 for Zeigler for life. *Held* to be correct.

2. The election of the widow did not destroy the right of the decedent to make a will and appoint an executor, in whom the whole personal estate vested for administration and distribution.

3. From the part not belonging to the widow the general and specific legacies were to be first paid, and the remainder, if any, go into the residue.

4. The widow was not entitled to half the mortgage specifically.

5. The executor should have included it in the inventory, although he could not be required to distribute it until he collected it, which he was bound to do as soon as it was due.

6. The title of the widow is through the executor, as it would be through an administrator if there were no will. She could not maintain an action against a stranger for any part of her share.

May 24th 1874. Before Sharswood, Williams, Mercur and Gordon, JJ.

Appeal from the Orphans' Court of *Juniata county*: No. 45, to May Term 1874. In the distribution of the estate of Robert C. Gallagher, deceased.

The decedent made a will, dated March 13th 1872. He died April 1st 1872.

He gave legacies of money and goods to his wife absolutely, and certain real estate for her life.

He directed his real estate to be sold after her death, and out of the proceeds he gave a number of legacies. He then made this bequest:—

"I give and bequeath unto Seth Zeigler the sum of $1000, which is to be in full settlement of all accounts. I also give and bequeath unto him, for and during the term of his natural life, the interest of $2500 owing by the Sulouffs and secured by mortgage on warehouse and lot. If the principal be paid in the lifetime of Seth Zeigler, I direct the same to be reinvested by my executor to secure the payment of the annual interest to him."

The residuary clause in the will was:—

"I direct all the rest and residue of my estate, real and personal, to be converted into cash, as soon as conveniently may be

[Gallagher's Estate.]

done after my decease, and all the residue of my estate, not heretofore devised and bequeathed, I direct shall be divided into three equal shares after the payment of debts and expenses, and I give and bequeath one share to the children of Samuel Gallagher; one share unto the children of Thomas Gallagher; and one share unto the children of Harriet Reynolds."

The widow, Jane Gallagher, refused to take under the will, and claimed her share of the testator's estate under the intestate laws. The "Sulouff mortgage" would become due on the 1st of April 1875.

The executors settled their account, which was confirmed May 3d 1873, and which showed in their hands a balance of personal estate amounting to $14,098.47. The "Sulouff mortgage," $2500, was not included in this balance, nor was it in any way brought into the executor's account.

L. W. Doty, Esq., was appointed auditor to report distribution of the balance.

On that part of the distribution which was the subject of review in the Supreme Court he reported:—

"Mr. Parker, on behalf of the widow, contended that the $2500 owing by the Sulouffs and secured by bond and mortgage, should be brought into the account for the purpose of ascertaining the widow's proper distributive share. The auditor has a threefold objection to this position: First, it is not properly before him, the executor not having brought it into his account. Second, it is not due, and will not be until the 1st of April 1875; and third, the widow must take her share of that particular thing, and not her proportionate part, including this, of the whole fund. This is in the nature of a specific bequest. As far as the widow is concerned, the decedent died intestate. This cannot occasion loss to the residuary legatees, but must be deducted from the amount coming to the specific legatee, Seth Zeigler. It is clearly the intention of the testator to charge that fund alone, with the payment of its interest, to Seth Zeigler during his life."

The widow filed this exception to the report of the auditor:—

"The auditor erred in not bringing the Sulouff mortgage of $2500 into the distribution account for the purpose of ascertaining the true amount of Jane Gallagher. It should be stated thus:—

| | |
|---|---:|
| Balance | $14,098.94 |
| Add Sulouff mortgage | 2,500.00 |
| Total amount | $16,598.94 |
| One-half for widow | $8,299.47" |

The court (Junkin, P. J.), concluding the opinion on the exceptions, said:—

* * * "Now it is undoubted that testator gives Zeigler the

interest of $2500, owing by the Sulouffs on a mortgage, yet this is only demonstrative, no more than saying out of what fund the interest shall be raised.   Considering that with us both specific devises, specific legacies, and demonstrative legacies abate upon insufficiency of assets from payment of debts; Armstrong's Appeal, 13 P. F. Smith 312; Barkley's Estate, 10 Barr 387 ; Hallawell's Estate, 11 Harris 223 ; unless the contrary purpose appears by the will, there is no sufficient reason why the estate of the testator should not be so marshalled as to carry out the intent; and the authority of the Orphans' Court to do so is fully vindicated in the cases cited, particularly in Barkley's Appeal, 10 Barr 387.   With this power in the court, Seth Zeigler's annuity can be preserved against the encroaches of the widow; and it does not follow that because one-half of the Sulouff mortgage must eventually go to her, that the testator's purpose to provide for him is frustrated. By marshalling the fund his intention can be carried out, and the loss fall where he must have intended it should, on the residuary legatees."

The court then decreed that of the sum of $14,098.94, the balance of the personal estate in the executor's hands, the widow should receive the one-half, $7049.47.   After deducting this sum and the amount of all the pecuniary legacies from the whole balance of real and personal estate in the executor's hands, there remained $2978.53.   The court further decreed that the executor retain in his hands the sum of $1250, to enable him, upon the maturity of Sulouff mortgage, to supply the deficiency which will then exist, by reason of the widow of testator being entitled to receive out of said mortgage the one-half thereof, to wit, $1250, so that he may be enabled to invest the sum of $2500, and pay the interest thereof annually to Seth Zeigler, as directed by the will of said testator, during the natural life of said Zeigler, and thus the purposes of the testator will be accomplished.   The court further decreed that $1728.53 which still remain be distributed to the residuary legatees.

Joseph Gallaher and others, the residuary legatees, appealed to the Supreme Court, and assigned the decree for error.

*E. S. Doty*, for appellants.

*E. D. Parker*, for appellees.

Mr. Justice SHARSWOOD delivered the opinion of the court, July 2d 1874.

It may be conceded that the bequest to Seth Zeigler of the interest of the Sulouff mortgage during his natural life, was a specific and not a demonstrative legacy.   In the view which we take of the case, it is quite immaterial.   The estate was amply

sufficient, after discharging all legal claims paramount to the will, including the claim of the widow under the intestate laws, to pay all the legacies given in the will—general or specific. It is very clear that the residuary legatees can take nothing until all these prior claims are discharged. "All the rest and residue of my estate not heretofore bequeathed," is all that they can demand. It appears to have been the idea of the auditor below that the widow, claiming her share of the personal property under the intestate laws, has a title to it specifically, just as she has to her share of the realty. This is a mistake. The election of the widow does not destroy the right of the decedent to make a will and appoint an executor. The entire personal estate, bequeathed or not, vests in the executor in trust for administration and distribution : First, to pay debts and other legal claims. The widow electing to refuse to take under the will, has such a claim, of which the decedent could not deprive her, as he might deprive his next of kin of all claim, and give the entire residue to strangers. Over that residue he has entire power; he can carve it out and distribute it as he pleases, and in what order he pleases. His general and specific legacies must first be paid, and then, if there is anything left, it goes to the residue. The widow had no right to the one-half of the Sulouff mortgage specifically. It was the duty of the executor to include that as well as all other assets in the inventory and appraisement. It is true he could not be required to distribute it until it was payable and received. If it was lost from the insufficiency of the security or any other cause, Seth Zeigler would get nothing, and the widow would lose one-half of that item in the inventory and appraisement. As against her, the executor would be bound to collect and distribute it as soon as due; the testator could not postpone it for the term of Zeigler's life. Nevertheless, Zeigler would be entitled to receive the interest of $2500 during his natural life. "If the principal be paid in the lifetime of Seth Zeigler, I direct the same to be reinvested by my executor to secure the payment of the annual interest to him." It is clear to us that as long as the estate can do so, after discharging all debts and paying over to the widow her one full moiety of the balance, Seth Zeigler is entitled, by the clear intention of the testator, to receive his annuity for life, before the residuary legatees receive anything. The title of the widow is under and through the executor, just as it would be under and through the administrator, if there was no will. She could maintain no action against a stranger for any part of it. We think, therefore, that the learned court below was right in securing the payment of this annuity to Zeigler, in preference to the claims of the residuary legatees.

　　　Decree affirmed and appeal dismissed at the costs of the appellants.